RICHARD E. NORRIS *v.* JOHN HANCOCK MUTUAL
LIFE INSURANCE COMPANY
[No. 72, October Term, 1935.]

*Decided January 16th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Joseph Loeffler*, with whom were *Benjamin Unger* and *Benjamin L. Berman* on the brief, for the appellant.

*Clarence A. Tucker* and *Biscoe L. Gray*, with whom were *Knapp, Tucker & Thomas* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The John Hancock Mutual Life Insurance Company of Boston, Massachusetts issued three industrial insurance policies, of the aggregate amount of $638, upon the life of Helen Norris. The assured was the mother of an infant, Richard E. Norris, who was named as the beneficiary, subject to a stipulation which was common to every one of these policies and which has become known as the "facility of payment" clause. After providing for proof of the death of the assured and for a compliance with certain formal requirements, the clause proceeded with the promise to pay the amount of the insurance carried "either to the beneficiary above named, if living, or to such other living beneficiary as may be duly and finally designated and recognized by endorsement hereon or to the Executor or Administrator of said Insured or to any relative by blood or connection by marriage, or to any person appearing to the Company to be equitably entitled thereto by reason of having incurred expense in any way on behalf of the Insured for burial or for any other purpose; and the receipt of such payee shall be conclusive evidence that payment has been made to the person or persons entitled thereto and that all claims under this policy have been fully satisfied."

While these policies were in force, the assured died and was survived by her infant son, and all things had happened and had been done for the performance by the assurer of its promises under the contract.

The assured was a widow at the time of her death, and

her sister, Susie Seymour, was, with the assured's son, the next of kin of the assured. The sister requested the assurrer to pay $426.50 of the insurance carried to Frederick A. Cole, an undertaker, to reimburse him for the funeral expenses and for the cost of a burial lot that he had paid or incurred. After making this payment, the residue of the insurance, or $211.50, was paid by the assurer to Susie Seymour as the guardian of the infant beneficiary. About two months later, the same Susie Seymour as his next friend brought an action at law in the name of the infant against the assurer for $426.50, on the theory that the payment of this sum to the undertaker was not a part performance of the contract of insurance.

There is nothing on the record at bar to raise an issue of fraud or good faith in respect to the action of the assurer in making the payment to the undertaker at the instance of the sister of the assured, who was at the same time the guardian of the infant beneficiary. The payment was not only for the expenses of the funeral, but also for those at the cemetery. The measure of the obligation in this respect were the terms of the contract of insurance. So, the provisions of section 5 of article 93 of the Code, which have been invoked to impose its terms as a restriction upon the amount of funeral expenses, but which have reference to the allowances, and their priority, in the statement of the account of an executor or administrator, can have here no governing effect because not so expressly agreed nor necessarily implied by the language of the contract of insurance. It should furthermore be noted in this connection that the limitation of $300 is not absolute, since the statute in terms permits a larger expenditure, should the orphans' court specially authorize it by order and the estate of the decedent be solvent. It would, therefore be difficult to argue that this statute had fixed, in a branch of the law to which it was not addressed, a definite standard by which the appropriation of the insurance money to the payment of funeral expenses in excess of $300, no matter how ill advised an extravagance it

might have been or however it might have been desired by the assured, would of itself be evidence of bad faith. However, neither the fact that the statute quoted has no application under the circumstances of this case, nor that the stipulation by the parties that the receipt of the person paid "shall be conclusive evidence that payment has been made to the person or persons entitled thereto, and that all claims under this policy have been fully satisfied" was intended to make incontestable the election of the assurer with reference to the person to be paid the insurance money, would prevent an inquiry and rescission, no matter the amount involved, if there be alleged and proved that, in determining who appeared to be equitably entitled by reason of having incurred expense in any way on behalf of the insured for burial or for any other purpose, the insurance carrier had been guilty of a fraud. 31 *C. J.*, title, Industrial Insurance, secs. 7-11, and cases there cited. In the pending appeal, fraud or its phase, bad faith, is neither alleged nor shown, and the duty of the court is indicated by what was said in *Fitzgerald v. Baltimore Life Insurance Co.*, 133 Md. 619, at page 622, 105 A. 775, 776:

"When we come to deal with industrial insurance, while the policy names the beneficiary, and provides for a change of such by the insured at any time during his life, there is a reserved power in the company issuing the insurance to pay either to the named beneficiary, or to others within certain well-defined classes, as it may deem 'most equitable' under the circumstances of each particular case. There is nothing corresponding to this to be found in regular insurance policies, or in the membership in mutual beneficial organizations. The real beneficiary, by the terms of the contract, may be either the one designated in the policy, or some one else within certain defined classes, in the exercise of the judgment and discretion of the officers of the company. It is purely a matter of contract between the insured and the company issuing the policy."

It follows that, on the facts of the record at bar, there was no error in instructing the jury to find for the defendant, and the judgment from which the appeal comes will be affirmed.

*Affirmed, with costs to the appellee.*